OPINION OF THE COURT
Stanley L. Sklar, J.
The principal legal issue raised on this hearing seeking the suppression of a pretrial identification of the defendant is the effect of the failure of the police to take a photograph of a lineup. I hold that the unexplained or inadequately explained failure to photograph a lineup constitutes substantial evidence that the lineup was impermissibly tainted. That failure, uncured by other evidence, requires suppression of the lineup identification.
THE FACTS
Several liquor stores in Greenwich Village had been robbed by the “Mouton-Cadet robber”. He was said to be a black male, about six feet tall, strong, who carried a knife concealed in a tightly rolled newspaper and who would ask for Mouton-Cadet wine. He would then take the knife from the newspaper and rob the liquor store.
On September 8,1980, Harry Mathure, the manager of a liquor store in Greenwich Village, was robbed by a man *434 whose description fit that of the Mouton-Cadet robber and, who, indeed, had asked him for Mouton-Cadet wine.
On November 3, 1980, Police Officer Edward McCarthy arrested the defendant. McCarthy brought Anthony to the precinct and spoke with Detective Maurice Cerulli, who arranged a lineup.
McCarthy contacted Mathure’s employer and said that he wanted Harry Mathure to view a lineup. McCarthy then went to the liquor store and brought Mathure to the precinct.
The lineup was conducted. All the persons in the lineup were seated. Mathure noticed that only two were tall. No photographs were taken of the lineup. Detective Cerulli and Officer McCarthy testified that film was not available. No detailed physical description of the participants was recorded. Nor were the officers able to recall any details of their appearances. The ages of the participants were recorded, as was the fact that they were all black males.
CONCLUSIONS OF LAW
I conclude that the People have failed to meet their burden of coming forward to show the fairness of the lineup.
We know extremely little about the participants in the lineup. We know how many they were, that they were all black males, that their ages ranged from 20 to 27 years old (the age of one police officer stand-in not being known), that they were seated, that a couple were “fooling around” during the lineup, and that only one was of a height comparable to that of Anthony. In contrast, we do not know, among other facts, their heights, their weights, their hair style, color of hair, whether they were dark or light skinned, whether they were at all similar in bodily type, whether any wore glasses, whether their clothing was disparate in appearance, whether any had scars, or whether any had facial hair.
Our case law does not require that all of the stand-ins be obvious fraternal twins of a suspect. However, the stand-ins must appear reasonably similar to the defendant in their physical characteristics. (People v Burwell, 26 NY2d 331; People v Lebron, 46 AD2d 776.)
*435 Mathure had little to contribute about the physical characteristics of the stand-ins. He said that all but one of the stand-ins differed in build from Anthony. He indicated that he was not so much interested in the other stand-ins as he was interested in selecting the perpetrator. His testimony does not fill in the missing details about the lineup on which the court could base an informed determination on whether or not the lineup was reasonable or unduly suggestive.
In short, the evidence does not establish whether even minimal standards of fairness were met. Moreover, the necessary information is lacking because of a disquieting factor — failure of the police in this case to preserve evidence.
Most notably, the police did not take a photograph of the lineup. Detective Cerulli and Officer McCarthy testified that no photograph was taken because there was no film. Their statement is an excuse, not an explanation of the failure to photograph. They did not, for example, indicate whether any effort was made to purchase film, or to borrow film from another precinct, much less indicate why such efforts were unavailing.
A critical issue presented in this, and in many other Wade hearings, is whether or not the appearances of the defendant and the stand-ins were reasonably similar so as to avoid undue suggestion. When, as here, no effort was made to preserve evidence of the characteristics of the participants for judicial scrutiny, the composition of the lineup must be suspect.
The use of photographs to preserve evidence on the issue of the reasonableness of the lineup is a favored practice. Manifestly, judicial resolution of the issue of the reasonableness of a lineup can be greatly, usually decisively, aided by viewing a photograph of the lineup. •
In Patton v United States (403 F2d 923, 926), the court said that' “As a technique to resolve authoritatively this kind of an appellate issue in the area of identification testimony, the utilization of photographs appears to hold out great promise.”
One Federal court has expressed a strong preference for the photographic preservation of lineups in order to permit *436 judicial review, and has commended police department regulations requiring photographs to be taken of lineups. (See United States v Hamilton, 420 F2d 1292.)
The New York City Police Department has issued legal bulletins which declare: “A polaroid photograph should be taken of the lineup as viewed by the identifying witness” (2 Legal Division Bulletin No. 16, 20/3, Dec. 11, 1972; 5 Legal Division Bulletin No. 2, Feb. 21, 1975). The bulletins authorize departure from this practice in “emergency situations”. With the possible exceptions of the assertion that the police did not have any film, no effort was made to bring this lineup within the “emergency situation” exception authorized by the police department’s own bulletins.
One court would require that a photograph be taken at every lineup to permit an informed, effective, and fair evaluation of lineup procedures. “Although the prosecution’s failure to produce such photographs should not itself invalidate an identification, I believe that such an omission, if unexplained, should be deemed to be evidence that the lineup was tainted by suggestive procedures.” (State v Delahunt, _ RI _, _, 401 A2d 1261, 1267; see, also, State v Earle, 60 NJ 550.)
I hold that failure to photograph the lineup constitutes substantial evidence that the lineup was not fairly conducted. When viewed in conjunction with a second disquieting factor, that Detective Cerulli and Officer McCarthy inexplicably failed to record the details of the lineup, a strong inference that the lineup was not fairly composed is compelled.
The failure of the police to take a photograph, coupled with their failure to record meaningful descriptions of the stand-ins, which deficiencies are uncured by the testimony of the complaining witness (or by other evidence specifically describing the stand-ins), requires suppression of the lineup identification.
(The balance of the decision, dealing with unrelated matters, has been deleted for publication.)