*324 OPINION OF THE COURT
Jerome L. Reinstein, J.
By separate indictments, later consolidated for trial, defendants stand accused, while acting in concert with each other and others, of, inter alia, murdering Nathan Masselli on or about August 25, 1982.
Each defendant moved to suppress potential identification testimony owing to improperly made previous identifications of said defendants by certain prospective witnesses. A pretrial suppression hearing was held before this court.
FINDINGS OF FACT
As to Defendant Buono
On September 14, 1982, Tom Stevens, a prospective identification witness, was shown an array of six photographs and identified a photo of defendant Buono as the person he saw in the driver’s seat of the red car (which was observed leaving the scene of the homicide) on August 25, 1982. On September 15, 1982, Stevens made a similar identification of Buono at a corporeal lineup consisting of six individuals held at the 48th Precinct.
Mr. Buono was represented at the lineup by his attorney, Peter Peluso, and by Mr. Peluso’s associate, Gary Reing. Prior to the actual viewing Mr. Peluso noted that his client was the only one in the proposed lineup wearing a distinctive type of sport shirt and brown shoes. Both of these items were replaced by a shirt purchased for Mr. Buono by Mr. Peluso and by black shoes borrowed from a police officer. Just prior to the actual viewing of the lineup by Tom Stevens Mr. Buono’s position in the lineup, at Mr. Peluso’s request, was changed from No. 5 to No. 6. Mr. Reing was excluded from the viewing room under the Bronx District Attorney’s “policy” of “one defendant, one attorney”; but, he was permitted to accompany Detective Geary when the latter went to bring the witness to the viewing room.
As to Defendant Odierno
On August 30, 1982, two days after defendant Odierno had been arrested and arraigned on a felony complaint, on ex parte application, an order was signed directing the Commissioner of the Department of Correction to produce *325 Odierno on September 1, 1982, for the purpose of conducting a lineup to determine if Joseph Lawrence, another prospective witness, could make a corporeal identification.
Mr. Odierno’s attorney, Louis Aidala, appeared at the lineup with a small portable tape recorder. He agreed with Assistant District Attorney James Shalleck not to talk into it while the witness, Lawrence, was in the viewing room. Mr. Aidala, after noting his objection to such restriction, nevertheless agreed. When Lawrence was brought into the viewing room he “froze” at the sight of Aidala and the recorder. Mr. Shalleck, fearful of “losing” the obviously nervous witness, directed Aidala to put down the recorder. When Aidala objected he was ejected. Shalleck refused to advise Odierno of such fact, though requested to do so by Aidala. Pursuant to Mr. Aidala’s prior request Mr. Odierno’s lineup position was changed from No. 4 to No. 3. A photo of the prospective lineup, before the aforesaid change was made, was taken; but no photo was taken of the actual lineup viewed by Lawrence.
CONCLUSIONS OF LAW
I. As to Defendant Buono
The court has viewed the photo arrays shown Tom Stevens and John Smith, another eyewitness, and a photograph of the lineup viewed by Mr. Stevens. The “fillers” used in each instance appear to be persons of similar age and facial features. While Mr. Buono wore lighter colored pants than the other “fillers” at the lineup, there was no specific complaint made with relation thereto. Officer Bardelli had darker pants available for Buono if an appropriate request therefor had been made. When objection was made as to Mr. Buono’s shirt and shoes corrective procedures were taken. There is no evidence that the witnesses were instructed as to who to identify. To the contrary, each was simply asked if he could identify anyone at the scene. In sum, the photo arrays, the lineup and the law enforcement procedures attendant thereat were not unnecessarily suggestive and conducive to a very substantial likelihood of an irreparable misidentification. There is no evidence that any of the officers Mr. Being saw exiting the viewing and lineup rooms communicated in any way with Mr. Stevens. Moreover, the People have proven, by clear and *326 convincing evidence, that any prospective in-court identifications will stem from an independent source. Both "Mr. Tom Stevens and Mr. John Smith had an adequate opportunity to observe Mr. Buono during the incident in a well-lit area. The weight to be given their testimony, of course, is for the jury to determine.
The court does not countenance the District Attorney’s exclusion of Mr. Being. It is well known that some attorneys are reluctant to attend lineups for fear they will be required to testify at subsequent Wade hearings. Mr. Peluso recognized this possibility and brought Mr. Being along as a possible potential witness. Particularly where, as here, the District Attorney has an employed stenographer available to transcribe what occurs at the lineup, defense counsel’s request to have an associate present appears reasonable. However, since Mr. Peluso was present during the viewing procedure, the exclusion of Mr. Being, though wrongful in this court’s view, does not require the extreme sanction of suppressing the prospective lineup identification testimony of Mr. Stevens.
II. As to Defendant Odierno
A. The Lineup
A different result is required because of the District Attorney’s improper conduct at the Odierno lineup on September 1,1982. Mr. Odierno’s right to counsel indelibly attached on the filing of the felony complaint (Kirby v Illinois, 406 US 682; People v Hawkins, 55 NY2d 474). While clearly the right to counsel does not include the right to disruptive counsel, there was no legitimate basis for the ejection of Louis Aidala. Mr. Aidala agreed not to speak into his recorder while the witness was in the viewing room. Mr. Shalleck, understandably concerned over the reaction of the witness when the latter saw Mr. Aidala and the tape recorder, ordered Mr. Aidala to put the recorder down. When Mr. Aidala objected to the change in the prior agreement, he was summarily ejected. However, such ejection was legally unwarranted and deprived Mr. Odierno of counsel at a critical stage of the proceeding. (People v Blake, 35 NY2d 331; United States v Tolliver, 569 F2d 724; People v Andriani, 67 AD2d 20; People v Johnson, 99 Misc 2d 450.) Absent some disruption or interference in the proceeding, the court sees no reason why a defense *327 attorney should not be permitted to record the viewing procedures either with the aid of a tape recorder or pen and paper. Concern for a witness’ fears, in this circumstance, cannot override a defendant’s right to effective assistance of counsel at such a crucial stage of the prosecution.
Another fatal defect in the lineup was the lack of any legal authorization for its being conducted.
The ex parte order entered August 30, 1982, directing defendant Odierno’s production on September Í, 1982, to permit the District Attorney to conduct a lineup at his office was supported by a perfunctory affidavit by Assistant District Attorney Shalleck which merely noted the pending “investigation of this case.” No notice of the application was given to defense counsel and no proceedings or hearings were held thereon.
CPL 240.40 authorizes a court to grant such an order only when an “indictment, superior court information, prosecutor’s information or information is pending”. A pending felony complaint is omitted, presumably because, by reason of its generally hearsay nature, it cannot serve as the basis for the prosecution of any crime (CPL 1.20, subd 8; People v Steiner, 103 Misc 2d 844). Since the same statute, however, does authorize such an order prior,to the filing of any accusatory instrument, if consistent with a defendant’s constitutional rights, a compelling argument could be made that it was also intended to cover the instant situation. However, before such an order may be issued, at the very least probable cause to believe a suspect or a defendant has committed a crime must first be established. (Matter of Abe A., 56 NY2d 288; Matter of Pidgeon v Rubin, 80 AD2d 568; People v West, 111 Misc 2d 658.) No such preliminary showing in the instant case was made at the time of the Odierno lineup. The police officer’s sworn felony complaint contains the rankest hearsay, merely accusing defendant Odierno of murder in the second degree “based on information from eyewitnesses known to your deponent and through official Police Department Investigation.”
In view of the specific language of the statute, cases relied on by the People which were decided prior to its effective date (Jan. 1, 1980), indicating that arraignment before a committing magistrate is sufficient to infer the *328 existence of probable cause and therefore validate the lineup are no longer authoritative. (See, e.g., Johnson v Louisiana, 406 US 356, 365; People v Middleton, 76 AD2d 762, affd but without reaching this specific issue for lack of preservation 54 NY2d 42.)
Since a photo of the proposed lineup, taken before Mr. Aidala’s exclusion and the change in Mr. Odierno’s position from No. 4 to No. 3, discloses the lineup’s participants, the failure to take a photograph of the actual lineup, though unfortunate, is not fatal. (Cf. People v Anthony, 109 Misc 2d 433.)
Despite the conclusion that the lineup must be suppressed for the legal deficiencies above noted, the issue of the lineup’s fairness must still be reached to determine if it fatally tainted a prospective in-court identification by Mr. Lawrence.
The photograph of the five-man lineup discloses that Mr. Odierno and one other participant appear practically bald (with only fringes of hair along the sides of their heads) and two others appear to have receding hairlines. All are male whites with not too dissimilar facial features and they all appear to be the same height. Their ages range from 49 to 67, with the second bald participant being the youngest, while Mr. Odierno and one other participant were the oldest.
Although defense counsel stresses the fact that Lawrence expressed initial uncertainty as to whether one of the perpetrators seen on August 25, 1982, was No. 1 or No. 3 (the two participants with the least amount of hair), Lawrence originally described one of the perpetrators as balding on top. The investigating police officer’s follow-up report discloses that on August 30, 1982, two days before the lineup, Lawrence only described one of the men at the scene of the incident as a male, white, 60’s, stocky build, blondish hair, balding in the top back with thin strands in the front of his head. In sum, under the totality of the circumstances known to law enforcement officials at the time of the lineup, the participants selected were not so grossly dissimilar as to be unnecessarily suggestive and conducive to a substantial likelihood of an irreparable misidentification.
*329 B. Independent Source
In any event, the People have established, by clear and convincing evidence, an untainted, independent basis for Lawrence’s prospective in-court identification. Lawrence was no casual observer at the scene viewing what, at its inception, appeared to be just another traffic accident; regrettably not an unusual occurrence in New York City. His own parked car had been struck and pushed onto the sidewalk and into a tree. When he observed several individuals who he believed may have been responsible for the damage to his vehicle attempt to flee in another car he borrowed a tire iron and rushed to the red Pontiac, saw two individuals enter it, noted its license number and attempted to prevent the car from leaving by striking it several times with a metal instrument. He had two to three minutes in a well-lit area to make these observations. Accordingly, Lawrence’s prospective in-court identification will stem from these on-the-scene observations untainted by any claimed unfairness of the lineup. Any inconsistencies which might arise from the several pretrial statements by Lawrence, or between Lawrence and the other eyewitnesses to the incident, may affect the weight of such evidence, not its admissibility.
In light of the foregoing, defendant Buono’s motion to suppress the prospective identification testimony of Tom Stevens and John Smith is denied in all respects; and the motions of defendant Odierno are granted to the extent of suppressing, on the People’s direct case, any lineup identification testimony by Joseph Lawrence, and are otherwise, in all respects, denied. The People, of course, are precluded from introducing, on their direct case, testimony regarding the extrajudicial photographic identifications of defendant Buono.