OPINION OF THE COURT
Joseph F. Bruno, J.
This is a case of first impression presenting a novel inquiry as to whether a lineup of balding heads meets with due process requirements.
*821 Defendant was accused of violating section 120.00 of the Penal Law and section 600 (1) (a) and (2) (a) of the Vehicle and Traffic Law. Subsequent to his arrest, there was a lineup arranged by the police wherein the defendant was identified by the complainant. Defendant moved for a Wade hearing, claiming that his constitutional rights were violated in that the police procedure used was unduly suggestive.
A hearing was held before a Judicial Hearing Officer (JHO), the Honorable Benjamin Altman, on June 18, 1991. The People presented one witness at the hearing, Detective Saverio De Felice of the 66th Squad in Brooklyn. There were no witnesses for the defendant. This court accepts the JHO’s determination that the testimony of Detective De Felice was credible and candid.
FACTS
On October 27, 1990, the complainant, who was accompanied by her daughter, parked her car on 44th Street between 12th and 13th Avenues in Brooklyn* at or about 2:45 p.m.; the purpose was to go "shopping.” The complainant inadvertently left her vehicle hazard lights on after she and her daughter disembarked from the car. Moments later, she returned with her daughter to turn the lights off. She opened the car door with her daughter beside her, at which time a car with plate numbers 7KX139NY came along traveling at a normal rate of speed and hit the complainant’s car door. The impact caused the door to swing wide open, and then back, striking the complainant’s daughter in the head, thereby injuring her.
The car never stopped. The complainant saw and remembered the license plate number as well as the color and the number of doors of the vehicle. The driver was described by the complainant as a small man or a man "sitting very low in the car” who had "a bald spot in the back of his head” which the complainant said she could positively identify.
The complainant did not give the detective any additional information with respect to the size and shape of the bald spot even though she called the bald spot "distinctive.”
When Detective De Felice began to assemble the lineup participants, he said that he was uncertain of the size of defendant’s bald spot. He followed the leads of the complainant and traced the license plate to the defendant, the owner of *822 the car. Detective De Felice then asked the defendant to come to the precinct. He noticed at the precinct that the defendant was short in stature and that he was balding.
On November 3, 1990, Detective De Felice assembled six males in the lineup seated with their backs to the viewing side and all balding in varying degrees. The six people, including the defendant, appeared to be of uniform height since all were seated and the defendant was sitting on a telephone book so that his height would not appear any differently. The telephone book could not be observed from the viewing window. The defendant chose the number three lineup position.
At the lineup, the complainant’s daughter was not present while her mother was viewing the lineup. The detective merely asked the complainant if she recognized anybody. In 10 seconds or less, the complainant picked out number three, the defendant. Subsequently, when the complainant’s daughter viewed the lineup, she was unable to make an identification.
The detective provided a photographic array of the lineup.
This court finds that: (1) All but one of the fillers had varying but obvious aspects of baldness; (2) While the defendant had the least amount of hair on his head, two of the fillers (Nos. 1 and 2) had bald spots that resembled the defendant’s bald spot in size and configuration; (3) All of the lineup participants appeared to have the same shade of hair color; (4) The defendant did not stand out from the fillers based upon physical build or clothing.
CONCLUSIONS OF LAW
The defendant moves to suppress the identification testimony because he contends the "bald spot” lineup was unduly suggestive and violative of his due process rights.
Defendant also moves to preclude the identification testimony as being "incredible as a matter of law.”
In the alternative, the defendant moves to reopen the pretrial hearing to gather more facts on the issue of suggestiveness and for the People to demonstrate "independent source” by clear and convincing evidence.
This court denies defendant’s motion in its entirety.
I find that the People met their initial burden of going forward by introducing a photographic array of the lineup which produced the identification. (See, People v Berrios, 28 *823 NY2d 361 [1971]; United States v Garner, 439 F2d 525 [DC Cir 1970].)
The defendant then has the burden of establishing that the identification procedure was unduly suggestive by proving, as stated in People v McClarin (157 AD2d 747, 748), that the lineup "was conducted in such a way that there is a substantial risk of irreparable misidentification * * * [b]ased on the totality of the circumstances.” (See also, People v Rahming, 26 NY2d 411 [1970].)
A review of the case law makes it quite clear that the test, as stated above, to be applied to establish undue suggestiveness within a lineup identification is well established and essentially undisputed. However, the application of that test or standard to the myriad of cases which have preceded this one has been anything but clear and well defined. There is no magical formula within which this court may insert the facts developed at this Wade suppression hearing and calculate the final result concerning suggestiveness.
Instead, this court must attempt to glean from the language of the case law and the facts of the reported cases any trend or direction that emerges. One method, which must be and is employed by this court, is to identify descriptive language in the cases which articulate a rule to be followed.
"Our case law does not require that all of the stand-ins be obvious fraternal twins of a suspect.” (People v Anthony, 109 Misc 2d 433, 434 [Sup Ct, NY County 1980].) There is no requirement that participants in a lineup be nearly identical in appearance to defendants. (People v Bullard, 146 AD2d 582 [2d Dept 1989].) However, the stand-ins must appear "reasonably similar” to the defendant in their physical characteristics. (People v Anthony, supra, at 434.)
Where several, but not all, of the stand-ins fit the description given by the complainant and they resembled the suspect, identification by suggestion was held to be not " 'highly likely’ ” and the identification was upheld. (People v Scott, 114 AD2d 915 [2d Dept 1985]; see also, People v LaMontagne, 135 AD2d 653 [2d Dept 1987]; People v Hernandez, 164 AD2d 920 [2d Dept 1990].)
Since there is no requirement for the numerical composition of a lineup, the lineup will be fair if some number of fillers and the defendant "resembl[e]” each other. (People v Hernandez, 164 AD2d 920, 921 [2d Dept 1990], supra.)
Moreover, a lineup identification is not unduly suggestive *824 where the physical appearance of the other participants in the lineup was "not so different” (People v Martinez, 158 AD2d 282 [1st Dept 1990]) or "not grossly dissimilar” to the defendant. (People v Ayala, 151 AD2d 1028, 1029 [4th Dept 1989].)
The due process rule that emerges from the case law regarding the composition of a lineup is whether enough of the fillers in the lineup were sufficiently similar in appearance to the defendant such that no characteristic or visual clue would have oriented the viewer toward selecting the defendant as a participant in the crime. (People v Fisher, 143 AD2d 1037 [2d Dept 1988], lv denied 73 NY2d 921; People v Mason, 123 AD2d 720 [2d Dept 1986].)
This court finds that as soon as Detective De Felice traced the license plate number to the defendant, the complaining witness’ sketchy description of the defendant became a moot point. The issue to be confronted in this case is: when the detective saw the suspect for the first time prior to the commencement of the lineup, should he have reconstituted the composition of the lineup to exactly match every filler to the defendant? This court answers that question in the negative provided that some number of the fillers appeared "reasonably similar,” "resembled,” were "not grossly dissimilar” to the defendant and provided that some, not all, of the fillers "were sufficiently similar” in appearance to the defendant such that no characteristic or visual clue would have oriented (the complainant) toward selecting the defendant as the perpetrator of the crime in question. (People v Fisher, 143 AD2d 1037, lv denied 73 NY2d 921, supra.)
In People v Clark (155 AD2d 548 [2d Dept 1989]), the Court held the composition of a lineup was not unduly suggestive, under the totality of the circumstances, even though the defendant and two other men were the only bearded men in a lineup of six persons.
Similarly, in People v McClarin (157 AD2d 747, 748 [2d Dept 1990], supra) the Appellate Division upheld a lineup where the defendant was the only participant wearing cutoff jeans when a witness described the perpetrator as wearing such jeans. The Court held that since others were wearing shorts and the defendant’s appearance was not "conspicuous,” the lineup was not unduly suggestive under the "totality of the circumstances.”
Defendant in this case maintains that he "fairly leaps out” as a participant in the crime. In People v Tatum (129 Misc 2d *825 196 [Sup Ct, Queens County 1985]), a case cited by the defendant, a sitting lineup was unnecessarily suggestive where the defendant was the only participant with a glass eye, which gave his face a very unusual appearance. The court noted that the defendant’s facial deformity was so "remarkable” that he " 'fairly leaps out’ ” as the one person who is so different. (Supra, at 202, citing United States v Sanders, 479 F2d 1193, 1197 [DC Cir 1973].) Even though the police found fillers reasonably close in age, weight and height to the defendant, the lineup was still invalid because the defendant’s dissimilarity could have easily been concealed by giving each of the fillers an eye patch. (Supra, 129 Misc 2d, at 203.)
In People v Moore (143 AD2d 1056 [2d Dept 1988], lv denied 75 NY2d 773), another case cited by the defendant, the defendant was the only person in the lineup with braids in his hair. The braids featured prominently in the witness’ description of the robbery perpetrator, and the court held the lineup was unduly suggestive because the police could have easily covered the hair of all of the lineup participants.
In the present case, as in People v Tatum (supra), and People v Moore (supra), the defendant has a distinguishing characteristic, a bald spot. In Tatum and Moore, the distinguishing characteristic of the defendant sets him apart from the other lineup participants. The lineups, in both of those cases, were unduly suggestive precisely because the police did not cover up the distinguishing characteristic, whether it be braids (Moore) or a glass eye (Tatum).
In this case, if the detective had covered up the bald spot of the defendant, or the defendant and the other lineup participants, an identification would have been impossible. The bald spot of the defendant was the principal physical characteristic seen by the complainant during the crime. Thus, the police need only insure that the defendant’s bald spot did not set him apart from the others, i.e., that some other reasonably similar bald spots appear in the lineup so that the complainant is not visibly oriented toward identifying the defendant.
Defendant contends that he is probably the shortest person (at 5 feet, 7 inches) in the lineup, that he was the only person seated on a phone book, and that the complainant may have seen the phone book used to disguise height disparity in the lineup. This court is satisfied with the finding of the Judicial Hearing Officer that the complainant could not see the phone book as she looked through a two-way mirror at the lineup.
*826 Defendant contends that the officers who participated in the lineup were more athletic, younger and stockier than the defendant and this factor, combined with the fact that defendant had the largest bald spot, made the lineup of bald men, in reality, a de facto showup. This court disagrees. First, as noted, the fact that the defendant sat on a phone book, which the complainant could not see, eliminated any height discrepancy between the defendant and the fillers. (See, People v Fisher, 143 AD2d 1037 [1988], lv denied 73 NY2d 921, supra; People v Wiley, 137 AD2d 735 [2d Dept 1988], lv denied 71 NY2d 1035.) Second, at least three of the fillers appear to be reasonably similar to the defendant in physical build, nor does there appear to be an age discrepancy that would orient the viewer toward selection of the defendant or make the lineup unduly suggestive. Finally, the complaining witness’ most prominent description of the suspect related to his bald spot, the color of his hair and the fact that he was either short, or seated low in the car. She could not discern his age or his physical shape from her brief observation of him at the time of the incident.
This court adopts the reasoning of the Judicial Hearing Officer who said that "Detective De Felice took great care in getting balding men * * * keeping the observers of similar observable height; saying very little to complainant except to ask if there was recognition; letting the defendant choose his number. All of these factors combined indicate that there is not the remotest violation of the constitutional proscription against an unduly suggestive identification procedure.” (People v Krel, NYLJ, Aug. 5, 1991, at 26, cols 3, 4 [Altman, J.H.O].)
Defendant contends that identifying someone from a lineup of bald spots is so tenuous, speculative and inherently implausible that it is "legally insufficient” to submit to a jury. The defendant maintains that the complaining witness’ identification of the defendant was "vague and sketchy at best” because the entire incident involving the fleeing car presumably lasted for a matter of seconds. Accordingly, the defendant argues that the proposed identification testimony is so devoid of content, detail and the traditional trappings of credibility as to be legally insufficient, or, incredible as a matter of law.
Defendant’s motion to suppress on the grounds that an identification could not have been made in such a short time span and that the identification is insufficient as a matter of law is beyond the scope of a Wade hearing. A Wade hearing is the appropriate means for determining whether a police- *827 arranged identification procedure complied with due process guarantees, but the accuracy of an eyewitness identification remains a question of fact for the jury. (People v Balsano, 51 AD2d 130, 132 [4th Dept 1976], citing Sobel, Assailing the Impermissible Suggestion: Evolving Limitations on the Abuse of Pre-Trial Criminal Identification Methods, 38 Brook L Rev 261, 319-320; see also, People v Hinds, 40 AD2d 786 [1st Dept 1972]; People v Dukes, 97 AD2d 445 [2d Dept 1983], lv denied 61 NY2d 673; People v Sanders, 108 AD2d 316, 318 [1985].)
The court in People v Brown (117 Misc 2d 587, 594 [Westchester County 1983]), a case cited by the defendant, stated, as a "compelling reason” for the preclusion of expert testimony on the reliability of eyewitness identification that "[t]he ultimate determination of the credibility of an identification witness’ testimony is, quite properly, the sole province of the jury.”
It is the jury in this case, or the court on motion, which ultimately should determine the credibility of the defendant’s identification by the complainant, Mrs. Joan Margarella, after it hears her testimony.
Defendant’s motion for an "independent source” hearing is denied. Since the procedure was not unduly suggestive, defendant’s right to an independent source hearing has not attached and there is no requirement that the People produce the complaining witness at the hearing.
[Portions of opinion omitted for purposes of publication.]
ADDENDUM
On June 24, 1992 the defendant was convicted after trial by jury, of a violation of section 600 (1) (a) of the Vehicle and Traffic Law, leaving the scene of an incident without reporting (property damage). The charge of reckless assault, third degree (Penal Law § 120.00 [2]), was dismissed by the court on motion of defendant. The jury acquitted the defendant of the charge of leaving the scene of an incident without reporting (personal injury) (Vehicle and Traffic Law § 600 [2] [a]).

 Later established at trial as the correct location.